UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-22719-CIV-ALTONAGA/Reid

ASSAF ABRAHIM ALFOQAHAA,

       Petitioner,

v.

MARKWAYNE MULLIN, SECRETARY
OF THE U.S. DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

       Respondents.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Petitioner, Assaf Abrahim Alfoqahaa's Petition for Writ of Habeas Corpus [ECF No. 1], filed on April 20, 2026. Petitioner challenges his detention at the Krome Detention Center ("Krome") in Miami, Florida. (*See generally id.*). Respondents filed a Response [ECF No. 8]; to which Petitioner filed a Reply [ECF No. 9]. The Court has reviewed the record, the parties' written submissions, and applicable law. For the following reasons, the Petition is denied.

**I. BACKGROUND**

Petitioner is a Palestinian man who entered the United States without authorization on August 23, 1999. (*See* Resp. 2 (citations omitted); *see also* Pet. ¶ 13 (alleging Petitioner entered in 1998)).[1] On August 27, 1999, Petitioner was served with a Notice to Appear, charging him with inadmissibility. (*See* Resp. 2 (citation omitted)). On May 12, 2003, an Immigration Judge ordered Petitioner removed to Palestine; and on May 25, 2004, the Board of Immigration Appeals affirmed

_____

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

the order of removal, making it final.  (*See id.* (citations omitted)).  In 2012, Petitioner voluntarily returned to Palestine.  (*See* Pet. ¶ 13).

On February 24, 2020, Petitioner re-entered the United States, also without authorization. (*See* Resp. 3 (citations omitted); *see also* Pet. ¶¶ 1, 13–14 (asserting Petitioner re-entered in 2019)). Customs & Border Protection ("CBP") encountered Petitioner upon his entry and detained him. (*See* Resp. 3 (citations omitted)).  On February 27, 2020, CBP reinstated the 2003 final order of removal against Petitioner; and on May 20, 2020, Immigration & Customs Enforcement ("ICE") released him on an Order of Supervision ("OSUP").  (*See id.* (citations omitted); *see also* Pet. ¶¶ 16–17).  Petitioner asserts that during his 2020 detention, ICE lost Petitioner's Palestinian birth certificate and some of his travel documents.  (*See id.* ¶ 14).

On September 30, 2025, ICE revoked Petitioner's OSUP and detained him.  (*See id.* ¶ 21). Upon Petitioner's detention, Respondents did not notify him of or explain the reason for the revocation of his OSUP.  (*See id.* ¶¶ 4, 20, 35; *see also generally* Resp.).

On December 17, 2025, ICE submitted a travel document application on Petitioner's behalf to the Israeli consulate.  (*See* Resp. 3 (citation omitted)).  In late March 2026, ICE twice followed up about the status of the application, and the consulate advised that the application was pending. (*See id.* (citation omitted)).  On March 27, 2026, Petitioner was transferred to Krome, where he remains.  (*See* Pet. ¶ 24).  Petitioner has been detained for approximately seven and a half months.

In the Petition, Petitioner asserts two claims for relief.  (*See generally id.*).  In Count I, Petitioner alleges his detention pending removal violates his substantive due process rights because there is no significant likelihood of his removal in the reasonably foreseeable future.  (*See id.* ¶¶ 27–31).  In Count II, Petitioner alleges Respondents' failure to provide him notice and an informal

interview upon revocation of his OSUP, as required under federal regulations, violated his procedural due process rights.  (*See id.* ¶¶ 32–35).

On April 23, 2026, Respondents provided Petitioner an informal interview regarding the reason for their revocation of his OSUP; and on April 24, 2026, they issued a notice revoking Petitioner's OSUP and provided him an additional informal interview.  (*See* Resp. 3–4 (citations omitted)).  The same day, Respondents filed the Response, which asserts that two federal statutes deprive the Court of jurisdiction over both claims; and that if the Court has jurisdiction, both claims should be denied on the merits.  (*See generally id.*).

## II.  LEGAL STANDARD

District courts have the authority to grant petitions for writs of habeas corpus.  *See* 28 U.S.C. § 2241(a).  Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted).  A writ may issue to a petitioner who demonstrates he is detained in violation of the Constitution or federal law.  *See* 28 U.S.C. § 2241(c)(3).  The Court's habeas jurisdiction extends to challenges involving immigration-related detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.  DISCUSSION

### A.  **Jurisdictional Bars**

***Section 1252(b)(9).***  Review before a court of appeals is the "sole and exclusive means for judicial review of an order of removal[,]" 8 U.S.C. § 1252(a)(5) (alteration added), and section 1252(b) sets forth procedures for that review, *see id.* § 1252(b).  Section 1252(b)(9) specifies that judicial review "of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to

remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." *Id.*

Respondents contend that this suit involves a question of law or fact as described in section 1252(b)(9), so Petitioner's claims must be heard as part of an appeals court's review of a removal order. (*See* Resp. 6–8). Respondents' theory is that Petitioner challenges the decision and action to detain him for purposes of removal, and those decisions and actions are thus actions taken to remove him from the United States. (*See id.* 7–8 (quoting 8 U.S.C. § 1252(b)(9))).

Respondents are incorrect. In fact, they cite authority that dismantles their position. (*See* Resp. 7–8 (citations omitted); *see also id.* 8 ("The reasoning in *Jennings* outlines why the Petitioner's claims cannot be reviewed by the Court.")). In *Jennings v. Rodriguez*, the Supreme Court rejected the reading of section 1252(b)(9) that Respondents urge: one whereby any question of law or fact down the causal chain from the Government's decision to remove an alien falls under section 1252(b)(9) "in the sense that the alien['s] injuries would never have occurred if they had not been placed in detention." 583 U.S. 281, 293 (2018) (alteration added). Surely, "cramming judicial review of those questions into the review of final removal orders would be absurd." *Id.*

Detention is not an "action taken" to remove an alien. *See id.* at 295 n.3 (explicitly rejecting the argument that, in the context of section 1252(b)(9), "*detention* is an action taken to remove an alien" (alteration adopted; emphasis in original; quotation marks and citation omitted)); *see also id.* (noting that detention pending removal is intended prevent an alien's flight or commission of a crime during the pendency of proceedings). And even if detention were an action taken to remove an alien, the "question is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action." *Id.* (emphasis in original). Petitioner here is "not asking for review of an order of removal; [is] not challenging the decision to detain

[him] in the first place or to seek removal; and [is] not even challenging any part of the process by which [his] removability will be determined." *Id.* at 294 (alterations added); (*see also generally* Pet.). Rather, Petitioner challenges Respondents' authority to detain him for an extended period, and Respondents' regulatory compliance. (*See* Pet. ¶¶ 27–35).

Section 1252(b)(9) therefore does not present a jurisdictional bar. *Jennings*, 583 U.S. at 294–95; *see also Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020); *Tran v. Warden, Fla. Soft Side S. Det. Ctr.*, No. 25-cv-1224, 2026 WL 672969, at *2 (M.D. Fla. Mar. 10, 2026).

***Section 1252(g).*** Under 8 U.S.C. section 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]" *Id.* (alteration added). Respondents assert their detention of Petitioner is part of their execution of his removal order, meaning Petitioner's claims arise from the Government's decision or action to "execute removal orders[.]" *Id.* (alteration added); (*see* Resp. 4–5). Respondents are again incorrect.

Respondents' reading of the statute would preclude essentially any challenge to the detention of an alien pending removal. Generally, "when confronted with capacious phrases like 'arising from,' [courts] have eschewed uncritical literalism leading to results that no sensible person could have intended." *Jennings*, 583 U.S. at 293–94 (alteration added; quotation marks and citations omitted). Section 1252(g)'s jurisdictional bar "applies only to three discrete actions" it lists: the Government's "decision or action to commence proceedings, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis and quotation marks omitted). "It is implausible that the mention of three discrete

events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings" — the interpretation Respondents ask the Court to adopt. *Id.*; *see also Jennings*, 583 U.S. at 294 (reiterating that the Supreme Court interpreted section 1252(g) narrowly in *Reno*).

Further, in *Camarena*, the only binding authority Respondents cite in connection with this argument (*see* Resp. 4–6), both petitioners sought to stay their removal pending applications they filed requesting certain rights to reenter the country after removal, *see Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1271–72 (11th Cir. 2021). Because the petitioners sought to "halt their removal[,]" they challenged the Government's execution of their removal orders, and section 1252(g)'s jurisdictional bar applied. *Id.* at 1272 (alteration added).

Petitioner does not ask the Court to prevent his removal or otherwise question the Government's authority to remove him. (*See generally* Pet.). He asserts that his prolonged detention and Respondents' failure to abide by federal regulations are unconstitutional, warranting his release from custody pending removal. (*See id.* 7, ¶¶ 27–35). Thus, section 1252(g) does not deprive the Court of jurisdiction. *Accord Canal A Media Holding, LLC*, 964 F.3d at 1257–58; *Tran*, 2026 WL 672969, at *2.

## B. Petitioner's Claims

Having concluded the Court has jurisdiction, the Court considers the merits of each claim.

*Count I.* In Count I, Petitioner asserts that his approximately seven-and-a-half-month detention violates 8 U.S.C. section 1231, as interpreted in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not significantly likely in the reasonably foreseeable future. (*See* Pet. ¶¶ 27–31). Respondents maintain Petitioner has not carried his burden of showing that removal is not significantly likely in the reasonably foreseeable future. (*See* Resp. 9–11).

Petitioner is presently subject to a final order of removal.  (*See* Pet. ¶ 16; Resp. 3 (explaining that in February 2020, CBP reinstated Petitioner's 2003 removal order)); *see also* 8 U.S.C. § 1231(a)(5) (an alien who previously had an order of removal in place and illegally reenters the United States has the prior order of removal reinstated).  Under the INA, ICE is required to remove an alien subject to a final order of removal within 90 days.  *See* 8 U.S.C. § 1231(a)(1)(A).  Certain categories of aliens, including those who — like Petitioner — are inadmissible under 8 U.S.C. section 1182, "may be detained beyond the removal period[.]"  *Id.* § 1231(a)(6) (alteration added); (*see also* Resp. 2 (Petitioner's original Notice to Appear charged him with inadmissibility under 8 U.S.C. section 1182(a)(6)(A)(i))).  But under *Zadvydas*, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [the] statute."  533 U.S. at 699 (alteration added; citation omitted).

Detention for up to six months is presumptively reasonable, while an alien may be held in custody beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.* at 701.  "Therefore, in order to state a claim under *Zadvydas*[,] the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (alteration added).  The Government must then "respond with evidence sufficient to rebut that showing."  *Zadvydas*, 533 U.S. at 701.

The longer an alien remains detained beyond the presumptively reasonable six-month period, the harder it becomes for the Government to show that his removal is reasonably foreseeable.  *See id.*  If an alien challenges his detention shortly after the six-month window has expired, the Government may more easily demonstrate the reasonableness of the detention's

length. *See McKenzie v. Barr*, No. 19-24098-cv, 2019 WL 13215652, at *3 n.1 (S.D. Fla. Oct. 30, 2019), *report and recommendation adopted*, 2019 WL 13215651 (S.D. Fla. Nov. 21, 2019).

Petitioner fails to provide evidence that there is no significant likelihood of removal in the reasonably foreseeable future. As explained, in December 2025, Respondents applied for a travel document to the Israeli consulate on Petitioner's behalf. (*See* Resp. 3 (citation omitted)). In March 2026, Respondents inquired with the consulate regarding Petitioner's request and were informed the application remained pending. (*See id.* (citation omitted)).

"District courts recognize[] that a delay in the issuance of a travel document does not, without more, establish that [a p]etitioner's removal will not occur in the reasonably foreseeable future even when detention continues past the 180 day" mark. *Brown v. United States Att'y Gen.*, No. 20-20055-cv, 2020 WL 13548089, at *4 (S.D. Fla. Jan. 31, 2020) (alterations added; collecting cases); *see also, e.g.*, *Jarrett v. U.S. Att'y Gen.*, No. 23-20790-Civ, 2024 WL 4165273, at *3 (S.D. Fla. Feb. 7, 2024) (the Government rebuts petitioner's contention that removal is not reasonably foreseeable "by showing that it is actively pursuing travel documentation and the . . . [c]onsulate has not indicated that the travel document request will be denied" (alterations added; citation omitted)); *Gueye v. Sessions*, No. 17-62232-Civ, 2018 WL 11447946, at *4 (S.D. Fla. Jan. 24, 2018) (petitioner fails to show his removal is not reasonably foreseeable where the "consulate of Senegal has not refused to issue a travel document for [p]etitioner or denied ICE's request for a travel document" (alteration added; citation omitted)).

Some courts recognize that an alien detainee's removal is not reasonably foreseeable if the Government's requests for travel documents are rejected and it does not appear that another country will accept him, *see, e.g.*, *Joseph v. Mukasey*, No. 08-cv-389, 2009 WL 331558, at *4 (N.D. Fla. Feb. 20, 2009) (granting petition where "[T]he Bahamas refused to issue a travel

document for" petitioner and there was no indication respondents could remove petitioner to Haiti, a potential alternative, in the reasonably foreseeable future (alteration added)); *Abuel-Hawa v. Mullin*, No. 26-22668-Civ, May 11, 2026 Order [ECF No. 14] 4–6 (S.D. Fla. 2026) (granting petition where Jordanian and Israeli consulates rejected Palestinian petitioner's applications for travel documents); especially if the requests for travel documents drag on for years and are repeatedly rejected, *see, e.g.*, *Zadvydas*, 533 U.S. at 684 (removal not reasonably foreseeable where three countries rejected Government's requests to remove petitioner over four years); *Drummond v. Lynch*, No. 15-cv-560, 2016 WL 4154925, at *4 (N.D. Fla. June 27, 2016) (removal not reasonably foreseeable where travel document request pending for two years and embassy raised concerns to U.S. Government about repatriating alien).

The parties' submissions do not present such concerns. Although Petitioner does not yet have travel documents, the consulate recently acknowledged it was processing the application (*see* Resp. 3 (citation omitted)), and Petitioner offers no evidence showing he will not receive the documents (*see generally* Pet.; Reply). Instead, Petitioner advances two reasons why, according to him, his removal is impossible. Petitioner contends that because he is Palestinian, he cannot be deported. (*See, e.g.*, Pet. ¶ 17 ("Petitioner is stateless and cannot be deported[.]" (alteration added)); *id.* ¶ 26 ("Because Petitioner is stateless, because no country has recognized him as a national, . . . Petitioner's removal is not reasonably foreseeable. It is, in fact, impossible." (alteration added)); Reply 2 (asserting Petitioner's removal is "structurally impossible")). Petitioner also emphasizes that ICE lost his Palestinian birth certificate and certain other travel documents upon his 2020 reentry, meaning Respondents lack the documentation required to obtain travel documents facilitating his removal. (*See* Pet. ¶ 14; Reply 4).

Neither contention has merit.  The Government routinely removes Palestinians and other stateless persons, and Petitioner fails to substantiate his contention otherwise.  (*See generally* Pet.; Reply).  Nor is there any showing that it is categorically impossible for Petitioner to obtain an Israeli travel document without a birth certificate.  (*See generally* Pet.; Reply).

To be sure, it is unnecessary for Petitioner to establish either point to have a valid *Zadvydas* claim.  But without any evidence that the Israeli consulate has rejected or will reject Respondents' request for travel documents, Petitioner's failure to supply some other reason why there is no significant likelihood of his removal in the reasonably foreseeable future precludes his claim.  *See Akinwale*, 287 F.3d at 1052 (alien "must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future").  This is especially true now, less than two months out from the six-month presumptively reasonable window.  Count I is due to be denied.

***Count II.***  In Count II, Petitioner asserts that because Respondents violated 8 C.F.R. section 241.4(*l*)(1), his detention violates his procedural due process rights under the *Accardi* doctrine, which requires administrative agencies to follow their own regulations.  (*See* Pet. ¶¶ 32–35); *see also generally United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

Section 241.4(*l*)(1) provides that an alien "who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody."  *Id.*  Such an alien "will be notified of the reasons for revocation of his or her release or parole" and "afforded an initial informal interview promptly after his or her return to" custody.  *Id.*  Section (*l*)(2) gives the Government "authority, in the exercise of discretion, to revoke release and return to" custody an alien.  *Id.* § 241.4(*l*)(2).  "Release may be revoked in the exercise of discretion when, in the opinion of the revoking official: . . . [i]t is appropriate to enforce a removal

order or to commence removal proceedings against an alien[.]" *Id.* (alterations added).  Section (*l*)(2) references no requirement for notice or an informal interview.  *See id.*

Courts nevertheless interpret section 241.4(*l*) to require notice and an informal interview upon revocation of release regardless of whether revocation occurs under section 241.4(*l*)(1) or (*l*)(2).  *See, e.g.*, *Banega v. Warden of Soft Side S. Facility*, No. 25-cv-1152, 2026 WL 234042, at *3 (M.D. Fla. Jan. 29, 2026) (collecting cases); *Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 2604573, at *6 (S.D. Fla. Sep. 9, 2025) (same); *see also id.* at *6–7 (explaining how section 241.4(*l*)'s text shows section (*l*)(1)'s requirements apply no matter the reason for the revocation of release).

Respondents assert they did not need to provide Petitioner the process described in section 241.4(*l*)(1) because they revoked his OSUP under section (*l*)(2).  (*See* Resp. 12–14).  They cite one case endorsing their interpretation (*see* Resp. 14 (citing *Barrios v. Ripa*, No. 25-cv-22644, 2025 WL 2280485, at *4 (S.D. Fla. Aug. 8, 2025))), which fails to persuade (*see also id.* 12–14; *id.* 13 (discussing 8 C.F.R. section 241.4(g), a regulation unrelated to the revocation of an alien's release)).  Respondents also do not contest that they failed to provide Petitioner notice and an interview promptly after the revocation of his OSUP.  (*See generally* Resp.).  Consequently, Petitioner was due the process set forth in 8 C.F.R. section 241.4(*l*)(1), and he did not receive it upon his September 2025 re-detention.

Respondents contend that to the extent section 241.4(*l*)(1) applies, the April 2026 notice and informal interview they provided Petitioner suffice.  (*See* Resp. 15).  As explained, on April 23, 2026, Respondents provided Petitioner an informal interview regarding the reason for their revocation of his OSUP; and the next day, they issued a notice revoking Petitioner's OSUP, providing him an additional informal interview.  (*See id.* 3–4 (citations omitted)).  Petitioner does

not contest that these events occurred in April 2026 or that they would have constituted regulatory compliance had they taken place at the appropriate time. (*See* Reply 4–5; *see also generally id.*). Thus, while Respondents provided the process due Petitioner under section 241.4(*l*)(1) well after the time contemplated in the regulation, Petitioner received the process to which he is entitled.

The ordinary remedy for a denial of due process is "only . . . the grant of the procedures due." *Ray v. Foltz*, 370 F.3d 1079, 1085 n.8 (11th Cir. 2004) (alteration added; citation omitted); *see also Ron Grp., LLC v. Azar*, 574 F. Supp. 3d 1094, 1107 (M.D. Ala. Nov. 29, 2021) ("The remedy for a violation of due process is process."). Therefore, because Count II is predicated on Respondents' failure to provide Petitioner process that Respondents have now given, Count II is denied. *Cf. Van v. Oddo*, No. 25-cv-00322, 2025 WL 3492736, at *4 (W.D. Pa. Dec. 5, 2025) (petitioner had "not shown that the alleged violations . . . would independently entitle [petitioner] to a grant of habeas relief in the form of release from detention" (alterations added; citation omitted)).

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Petitioner, Assaf Abrahim Alfoqahaa's Petition for Writ of Habeas Corpus **[ECF No. 1]** is **DENIED**. Final judgment will issue by separate order. The Clerk of Court is directed to **CLOSE** the case.

**DONE AND ORDERED** in Miami, Florida, this 19th day of May, 2026.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record

12